### No. 10,860.

SUCCESSION OF MRS. CARMELITE CARCAGNO, WIDOW OF BERTRAND SALOY.

| 43 | 1151 |
| 45 | 1387 |
| 43 | 1151 |
| 52 | 1191 |
| 115 | 550 |
| 43 | 1151 |
| e118 | 280 |
| 118 | 283 |

1. Art. 1213 C. C. authorizes the attorney of absent heirs, in the interval between the opening of the succession and the appointment of an administrator, to perform conservatory acts, the delay of which may injure the succession; and when advised that certain effects, in the possession of a third person, do or may belong to the succession, he is authorized to inform the court, and to invite such action as may secure the noting of such effects upon the inventory.

2. The law commands the probate judge to cause an inventory of succession property, and prescribes that such inventory shall embrace a proper description of all effects of the succession.

3. In the confection of an inventory, neither the judge nor the notary decides questions of title or possession  But when particular effects are pointed out, even in the possession of a third person, as claimed to belong to the succession, it is proper to have such effects noted and properly described in the inventory, though without prejudice to the rights of the third possessor.

4. Finding that the orders of the judge complained of had no other purpose or effect except to secure a proper inventory, and did not divest either the title or right of possession of appellant, and in absence of any showing of injury or reason why they should be reversed, we decline to interfere with them.

APPEAL from the Civil District Court, Parish of Orleans. *Rightor, J.*

*Charles Lougue* for Appellant.

*Benjamin C. Elliott,* Attorney for Absent Heirs, Appellee.

The opinion of the Court was delivered by

FENNER, J.  The succession of Mrs. Bertrand Saloy was opened upon the petition of one who represented herself as a resident heir of deceased, who stated in her petition that certain of the heirs were absent, who prayed for the appointment of an attorney of absent heirs, and for an inventory of the property of the succession, and who also prayed for her own appointment as administratrix.

The judge entered his order directing that the petitioner's application for appointment as administratrix be advertised according to law—ordering an inventory of all the property and effects left by deceased to be taken by Chas. T. Soniat, notary public—and appointing B. C. Elliott, Esq., as attorney of absent heirs.

After qualifying according to law, the attorney of absent heirs presented to the court the following petition:

"The petition of B. C. Elliott, duly appointed and sworn as attorney to represent the absent heirs of the deceased in this succession, shows:  That he is informed and believes that a bank box containing a very large amount of valuables, lately belonging to the deceased, is now in the vault of the Whitney National Bank, deposited in the name of Mrs. Louque, or her husband, Louque or Victor Pede-

lahore, under the claim or allegation that said box and its contents were received as a manual gift from deceased, and that it is neces- sary for the preservation of the rights of the absent heirs that said box and contents should be included or noted in the inventory.

" Wherefore, he prays that said Whitney National Bank be ordered to retain said box in its possession until the same shall be examined by the notary ordered to take the inventory herein, and its contents duly noted, or until further orders of this court, without prejudice to the rights of any one claiming said box, and for general relief," etc.

On this petition the judge entered the following order:

" Let the Whitney National Bank be and it is ordered to retain possession of the box herein described and its contents until the same shall have been examined and noted by the notary, Charles T. Soniat, Esq., and until further orders of court.

"*New Orleans, April 11, 1891.*

" (Signed)　　　　　　　　N. H. RIGHTOR, *Judge.*"

Thereupon Mrs. Louque appeared by a rule upon the attorney of absent heirs, in which she set up her claim as owner of the box and contents under a manual gift from deceased, made some days before her death, and called on him to show cause why the above order " should not be quashed and set aside, and why your mover *should not be recognized as sole owner of said box and contents.*"

To this rule certain heirs of Mrs. Saloy personally intervened, specifically denying the title of Mrs. Louque, averring that the prop- erty belonged to the succession, and praying for an order directing that the box and its contents be turned over to the succession to be distributed among the heirs according to law.

These intervenors also filed another petition for an order direct- ing the Whitney National Bank to produce the bank box in open court on a day fixed; to which the bank filed answer that the box was deposited in a steel compartment of its deposit vault, of which Mr. and Mrs. Louque held the key, and which could not be opened without the production of that key.

Thereupon it appears that the judge, of his own motion, entered the following order or direction to the notary as supplementary to his original order:

" Mem: Mr. Chas. T. Soniat, the notary designated to take the inventory of this succession, will communicate the within order to

73*

the Whitney National Bank; and if the officers of said bank should seem unable to give access to the box and contents in question, by reason of the key of said box not being in their possession, or under their control, then the notary having informed himself as to the person who may have possession or control of said box, whether it be Mrs. Geo. A. Louque, nee Carmelite Pons, or other person, and shall demand and receive said key, and having completed the inventory of said box and contents, according to law, shall, without unnecessary delay, report his action to this court.

" (Signed)                           N. H. RIGHTOR, *Judge.*"

The *proces verbal* of the notary shows that, under this direction, he demanded the key of Mrs. Geo. A. Louque, who admitted its possession, but declined to deliver it.

On the same day, Mrs. Louque discontinued the rule which she had taken; and, on the following day, she applied for and obtained a suspensive appeal from both the orders above referred to.

We have thus fully stated the proceedings, because they are violently assailed, in this court, as operating an unwarranted and usurpatory divestiture of plaintiff's title and possession, without due process of law.

Her counsel has referred us to the following authorities, which we have carefully examined, and which substantially hold that the adverse possession and title of third persons of property claimed also by a succession, cannot be divested under summary proceedings (and still less by *ex parte* orders) in the mortuary proceedings, but that the succession, like any other person, must assert its rights in the appropriate ordinary action. Lavigne vs. Chalambert, 11 La. 18; Suc. McKinney, 5 An. 748; Suc. Mielke, 8 An. 11; Suc. Moore, 18 An. 512.

The correctness of these decisions is too obvious to admit of dispute, and we are quite sure the learned district judge would never have violated the principles therein announced.

The orders complained of did not purport either to determine the title or to transfer the possession of the property.

Their sole and evident object was to subject the property, in the possession in which it stood, to the view of the notary charged with taking the inventory, in order that he might inspect the same, ascertain its nature and value, and make a note thereof on the inven-

tory, as property in the adverse possession of a third person, to which the succession had or might have a claim.

This clearly appears from the terms of the original petition and order, and the supplemental order must be construed in accordance therewith. The order only directed the bank to retain possession of the box and contents " *until* the same shall have been examined and noted by the notary." The concluding words, " and until further orders of the court," could only have been intended to hold the order in force until the court, having first satisfied itself that the purpose of the order had been accomplished, should revoke it.

If Mrs. Louque had complied with the order by exhibiting the contents of the box to the notary, to be noted on the inventory, we can not doubt that the order would have been cancelled, and her possession relieved from all restraint. If, indeed, after such action, she had demanded the discontinuance of the order, and it had been refused, she would have had grave cause of complaint, which would have justified redress at the hands of the court.

But she chose to pursue a different course. Without applying for any explanation or modification of the order, she simply declined to permit access to the box, and filed a rule in the case, in which she, herself, put her title at issue and asked for a judgment recognizing her as owner. It was only after the other alleged heirs had intervened, accepting this issue, denying her title and asserting title in the succession, that she hastily discontinued her rule, and took the present appeal.

The action of the attorney of absent heirs, in calling the court's attention to the situation of this property and in inviting some action in order to ascertain its nature and value, in order that it might be noted on the inventory as a basis for the assertion of any claim the succession might prove to have thereto, was certainly proper and within the line of his duties, as prescribed by Art. 1213 C. C.

Nor do we think that, in these orders, as we construe them, the judge exceeded the broad powers conferred upon him in the exercise of his probate jurisdiction.

The law makes it his duty to have an inventory taken. C. C. 1035, 1036, 1039, 316.

The same articles prescribe that the inventory shall include all the effects of the succession, or, in the language of Mr. Cross, " an exact

and particular description of all the effects, movable and immovable, of the succession." Cross on Succession, p. 9.

In the confection of an inventory, neither the judge nor the notary determines questions of title or possession. But when particular effects are pointed out, even in the possession of a third person, which are claimed to belong to the succession, it is proper to note such claim upon the inventory, and to give a proper description of the effects so claimed, without prejudice, of course, to the rights of the third possessor, otherwise it might turn out that *all* the effects of the succession were not included in the inventory, and the mandate of the law would be violated.

The only way of giving a description of these effects, or of arriving at any estimate of their value, was by opening the box and examining them.

The order of the judge was, therefore, natural and proper, and, presumably, not injurious to the rights of any one.

We are not to be construed as authorizing anything like a right of search, as to which, under the facts of this case, we express no opinion. *Non constat*, that the judge would have enforced the opening of the box against the will of the possessor.

Under the terms of the order, its only effect was to hold the box where it was until its contents were ascertained, and when the possessor prevented its opening, the box simply remained in the custody of the bank, until further order of the court. The effect, in that case, would have been simply that of a judicial sequestration, which we think, in such a case, would have been authorized under Article 273 of the Code of Practice, at least until the succession could be represented by the appointment of an administrator, who could invoke the proper conservatory process to protect the interest of the succession.

Appellant has suggested no injury suffered by her from these orders, and no reason why they should now be interfered with. On the contrary, her counsel admitted in argument that she had voluntarily exposed the contents of the box, and that the title thereto was now regularly at issue in pending litigation.

Judgment affirmed.